2C

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

United States District Court
Southern District of Texas
FILED

AUG 3 1 2001

Michael N. Milby
Clerk of Court

BLANCA OLMOS                        §
                                    §
            Plaintiff,              §
                                    §
v.                                  §   CIVIL ACTION NO. 01-016
                                    §
COASTAL TRANSPORT,                  §
                                    §
            Defendant.              §

## DEFENDANT'S PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW

Coastal Transport, Inc. ("Coastal") proposes the following Findings of Fact and Conclusions of Law:

I.      Findings of Fact

A.      The Sexual Harassment Claim

1.      Olmos was hired in September 1996 as a truck driver at Coastal's Harlingen Terminal.

2.      At all times that Olmos worked for Coastal, her supervisor was Manuel Garza. Garza also worked with Manuel Loya, a dispatcher at the Coastal Terminal.

3.      In the summer of 1997, Olmos complained to Tammy Carlin, Coastal's Human Resources manager, that Manuel Loya had been bothering her by persistently asking her out on dates.

4.      Coastal has a policy which prohibits sexual harassment. The policy advises employees who believe that they have been the subject of discrimination or sexual harassment to immediately report any harassment to company management.

643085_1.DOC

5.     Following Olmos' complaint, Loya was promptly reprimanded and given a written warning in which he was warned that any future complaints about him would result in his termination.  After August 1997, Olmos never again complained to Coastal about Loya.

6.     Olmos now claims that Loya's harassment of her went far beyond asking her out on dates.  She alleges that Loya also kissed her and that sometimes he would come from behind her and put his arms around her.  She also alleges that Loya continued to harass her after she complained about him although she acknowledges that she never again complained to Coastal about Loya's behavior.

7.     Additionally, when Olmos filed a Charge of Discrimination with the Equal Employment Opportunity Commission on December 23, 1999, she did not complain about sexual harassment at all, much less that Loya had sexually harassed her.  In her Charge of Discrimination she simply complained that the terminal manager, Manual Garza, had discriminated against her because of her sex.  Olmos made it clear, however, that Garza never sexually harassed her.

8.     In fact, when Carlin, Coastal's human resources manager, received Olmos' EEOC Charge in early 2000, she went to Harlingen to discuss it with Olmos.  Carlin asked Olmos if she was still having problems with Loya because Olmos had not complained about Loya since August 1997.  Olmos admits that she told Carlin that she had not had any problems with Loya since her complaint nearly three years earlier.

9.     While Olmos did complain about Loya's sexual harassment when she filed a charge with the Texas Commission on Human Rights, on November 13, 2000 (after she had filed the present lawsuit), she only complained about Loya's conduct prior to his reprimand in August 1997.  She did not mention any post-August 1997 conduct.

10.    The Court finds that Olmos' testimony that Loya continued to sexually harass her after she complained in the summer of 1997 was not credible because she never complained about Loya to Coastal again, she failed to mention Loya's harassment to the EEOC when she filed her Charge of Discrimination in late 1999, and she failed to describe any post-August 1997 harassment in her affidavit to the Texas Commission on Human Rights which she prepared after she had filed the present lawsuit.

B.    The Sex Discrimination Claim

11.    Olmos also claims that she was discriminated against because of her sex by the terminal manager, Manuel Garza.  She claims that she was discriminated in three ways: (1) she was not reassigned her old truck when she returned from a three-month medical leave at the beginning of 1999; (2) she was terminated in May 1999; and (3) she was discriminated against in her pay and assignments when she was reinstated after her May 1999 termination.

12.    Olmos claims that Garza began discriminating against her after she returned from a three month medical leave at the beginning of 1999.  At Coastal, drivers were assigned trucks by seniority.  The most senior drivers were assigned specific trucks while more junior drivers were assigned whatever truck was available that day.  Prior to Olmos' medical leave in 1999, because of her seniority, she had been assigned to a specific truck.  However, because she had been out for an extended period of time, when she returned from her medical leave, her old truck had been reassigned to someone else.  The Court finds that there is no evidence that Garza was motivated by Olmos' gender in making this decision or that Olmos was treated differently than similarly situated male drivers who had been out on an extended medical leave.

13.    The following events led to the May 1999 termination.  First, on April 14, 1999, Olmos intentionally drained between 10 and 15 gallons of fuel in the middle of the yard at the

Harlingen terminal.  At that time Olmos was warned that another incident like this could result in her termination.

14.     On May 20, 1999, five weeks after she had been warned for spilling fuel in the terminal yard, Olmos had an accidental spill at a Circle K in Brownsville, Texas.  Although Olmos called the office and reported that she was having some problems with her truck, she did not tell the dispatcher who was on duty that there had been a spill.  Because of her failure to report the spill, Garza terminated her.

15.     After she was terminated, Olmos called to complain to Tammy Carlin, Coastal's Human Resources Manager.  After talking to the dispatcher who had been on duty, Carlin confirmed that Olmos had not reported the spill.  However, Carlin also learned that Olmos had reported having some problem with her delivery although she had not indicated the gravity of the problem or that the problem had been a spill.  While Olmos' failure to specifically report the spill had been in clear violation of Coastal's policy, Carlin recognized that her failure may have been a result of Olmos' poor communication skills and not a deliberate decision to conceal the spill. Consequently, based on Carlin's recommendation, Coastal rescinded its determination to terminate Olmos and reinstated her.

16.     Although Garza's decision to terminate Olmos was rescinded by his superiors, the Court finds that Garza's decision was not motivated by Olmos' sex but because of Olmos' failure to report the spill.  The Court finds no evidence to support Olmos' claim that Garza's decision to terminate Olmos in May 1999 was a result of gender discrimination.

17.     As for Olmos' claim that she was given fewer opportunities to make money than her male counterparts following her reinstatement, there is no evidence to support this. Coastal's pay records for the second half of 1999 demonstrate that Olmos was actually earning more than

the average driver. Therefore, the Court finds that Olmos was not discriminated against with respect to her pay.

### C.    Olmos' Final Termination

18.    On May 5, 2000, Olmos was injured when a fuel pump "burped" and splashed fuel all over her while she was delivering fuel at a TexMart store in San Benito, Texas. Olmos was placed on unpaid leave for 13 weeks in accordance with Coastal's leave policy.

19.    On August 24, 2000, at the end of the 13-weeks leave, Olmos was terminated because she was still not able to return to work at that time. Olmos continued to receive worker's compensation benefits through October of that year. Olmos has not claimed, nor does this Court find, that the termination in August 2000 was motivated by her sex.

## II. CONCLUSIONS OF LAW

### A.    The Sexual Harassment Claim

1.    In order to bring a claim under Title VII, a Plaintiff must first file a timely charge of discrimination. Olmos filed an EEOC charge on December 23, 1999, for which she received a Right to Sue letter on May 12, 2000. In that Charge of Discrimination, Olmos complained that she was discriminated against when she was terminated on May 27, 1999, and that she was discriminated against in the assignment of trucks and loads resulting in her earning less than similarly situated male drivers.

2.    The "crucial element of a charge of discrimination is the factual statement contained therein." *Sanchez v. Standard Brands, Inc.*, 431 F.2d 455, 462 (5th Cir. 1970). Courts may only exercise jurisdiction over claims encompassed within the EEOC charge and claims related to those claims. *Nealon v. Stone*, 958 F.2d 584, 590 (4th Cir. 1992). The EEOC was only given notice of Plaintiff's claims of sex discrimination, not her two year old claims of

sexual harassment. Hence, Olmos failed to exhaust her administrative remedies with respect to her sexual harassment claim because she did not allege sexual harassment in her claim.

3.      Moreover, even if Olmos' sexual harassment claims had been brought to the EEOC's attention, they would be barred by limitations. Olmos cannot complain about any harassment that occurred more than 300 days prior to the filing of her charge. 42 U.S.C. § 2000e-(5)(e)(1). Olmos failed to establish that any sexual harassment occurred within the limitations. If any harassment occurred, it occurred prior to August 1997, more than two years before she filed her charge. Accordingly, Olmos' claim of sexual harassment is barred by limitations.

4.      Finally, even if Olmos had been harassed within the limitations period, Olmos has admitted that she did not complain to Coastal about Loya's sexual harassment after 1997 even though she was fully aware of Coastal's sexual harassment policy. Thus, even if she had been harassed, Olmos' sexual harassment claim would still fail because Coastal took reasonable care to prevent and to promptly correct any sexually harassing behavior by Loya, and Olmos failed to unreasonably failed to take advantage of any preventative or corrective opportunities by Coastal. *Faragher v. City of Boca Raton*, 524 U.S. 775, 807 (1998).

### B.      The Sex Discrimination Claim

5.      Olmos' sex discrimination claim is analyzed under the burden-shifting framework first established in *McDonnell-Douglass Corp. v. Green*, 411 U.S. 792 (1973). Under this analysis, the initial burden of establishing a *prima facie* case of discrimination lies with the plaintiff. *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506 (1993). If the plaintiff establishes a *prima facie* case, the defendant must articulate a legitimate non-discriminatory reason for the challenged action. *Id.* at 506, 08. An employer need not prove the legitimate reason. It need

only produce some evidence to support its reason. *Id.* Once the defendant articulates such a reason, the plaintiff is then accorded the opportunity to demonstrate that the defendant's articulated reason is a pretext for discrimination. *Id.*

6.   Olmos complains that Garza discriminated against her in three ways: (1) by not reassigning her the old truck when she returned from medical leave in 1999; (2) by terminating her in May 1999; and (3) by paying her less than similarly situated male drivers after she was reinstated following her May 1999 termination.

7.   With respect to Olmos' complaint about her truck assignment the Court finds that there was no evidence that she was assigned this truck because of her sex. However, even if this assignment had been discriminatory, it would not have to amount to an "adverse employment action" under Title VII. *See, e.g., Enowmbitang v. Seagate Tech., Inc.*, 148 F.3d 970, 973-74 (8th Cir. 1998) (failure to provide plaintiff with computer and issuance of poor evaluation were not adverse employment actions).

8.   While her termination in May 1999 (which was rescinded five days later) could have been viewed as an "adverse employment action," the Court finds no evidence that it was based on Olmos' gender. Olmos offered no evidence that she was replaced by a male employee or that similarly situated male employees had been treated differently. Moreover, Olmos offered no evidence that Garza's reasons for terminating her were simply a pretext to cover up discrimination. In fact, there was substantial evidence that supported Garza's termination decision. Not only was there evidence that Olmos had been warned a month earlier for a previous spill, but there was also evidence that Olmos had failed to report the May spill.

9.   Finally, Olmos failed to establish a *prima facie* case of discrimination with respect to her claim that she was given fewer loads or paid less than male drivers because there

643085_1 DOC                                    7

## CERTIFICATE OF SERVICE

I certify that on the _**30**_ day of August, 2001, a correct copy of the Defendant's Proposed Findings of Fact and Conclusions of Law has been served on Plaintiff by placing same in the United States mail, certified, return receipt requested with proper postage affixed and addressed as follows:

Sergio Sierra
1325 Palm Blvd., Suite B
Brownsville, Texas
(956) 544-4761 (Telecopy)

_Christophe VBaum_
Attorney for Defendant

ClibPDF - www.fastio.com

was uncontroverted evidence that Olmos earned more than the average driver at the Harlingen

terminal during this time period.

      10.    Therefore, Olmos' lawsuit should be dismissed and she should recover nothing.

                  Respectfully submitted,

CHRISTOPHER V. BACON
Federal Bar No. 12670
State Bar No. 01493980
Attorney-in-Charge
DOUGLAS E. HAMEL
Federal Bar No. 3644
State Bar No. 08818300
2802 First City Tower
1001 Fannin
Houston, Texas 77002-6760
(713) 758-1148 (Telephone)
(713) 615-5014 (Telecopy)
ATTORNEYS FOR DEFENDANT
COASTAL TRANSPORT

643085_1.DOC

**8**